Defendants-appellants, Columbus Mayor Gregory S. Lashutka, Columbus Safety Director Thomas W. Rice, Sr., Columbus Assistant Safety Director David Sturtz, Columbus Police Commander D. James Dean, and Columbus Police Lieutenant Thomas Fischer (collectively "individual defendants"), and the City of Columbus ("Columbus"), appeal from a judgment of the Franklin County Court of Common Pleas denying their motions to dismiss the claims of plaintiffs-appellees, Columbus Police Commanders Curtis K. Marcum and Nick C. Panzera, pursuant to Civ.R. 12(B)(6).
This appeal arises out of a 1996-1997 mayoral investigation into allegations of misconduct by Columbus Police Chief James Jackson. The investigation was conducted by a committee appointed by Mayor Lashutka, the principal members of which were Safety Director Rice, Assistant Safety Director Sturtz, Commander Dean and Lieutenant Fischer. As part of its investigation, the committee looked into allegations of official misconduct by subordinates of Chief Jackson including plaintiffs. The investigation concluded on June 30, 1998, with the committee's presentation of the Mayoral Investigative Report to Mayor Lashutka. After reviewing the report, Mayor Lashutka chose to accept the report in its entirety, and released it to the public on July 1, 1997.
On January 6, 1998, plaintiffs filed an amended complaint alleging that the Mayoral Investigative Report contained information defamatory to them, and asserting claims for defamation and conspiracy to defame against the individual defendants,[1] and claims for defamation, conspiracy to defame, negligence, and negligent supervision against Columbus. Defendants then moved to dismiss each of plaintiffs' claims pursuant to Civ.R. 12(B)(6). The individual defendants sought to dismiss plaintiffs' claims against them based upon doctrine of absolute privilege, and Columbus sought to dismiss plaintiffs' claims against it pursuant to the immunity provided by R.C.2744.02(A)(1). On May 15, 1998, the Franklin County Court of Common Pleas issued a decision denying defendants' motions to dismiss. Defendants appeal therefrom, assigning the following errors:
 I. ERROR ASSIGNED BY DEFENDANT-APPELLANT GREGORY S. LASHUTKA
 The court below erred in denying Defendant-Appellant's Motion to Dismiss Count I (defamation) and Count II (conspiracy to defame) of Plaintiffs' Amended Complaint.
ASSIGNMENT OF ERROR [OF THOMAS W. RICE, SR.]
 THE TRIAL COURT ERRED IN OVERRULING DEFENDANTS-APPELLANTS' MOTIONS TO DISMISS COUNTS ONE (DEFAMATION) AND COUNT TWO (CONSPIRACY TO DEFAME) OF THE AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF COULD BE GRANTED BECAUSE THE ALLEGEDLY DEFAMATORY STATEMENTS ON WHICH THESE CLAIMS ARE BASED WERE MADE IN AN ABSOLUTELY PRIVILEGED COMMUNICATION.
 ASSIGNMENT OF ERROR [OF DAVID STURTZ, D. JAMES DEAN AND THOMAS FISCHER]
 THE TRIAL COURT ERRED IN RULING THAT THE ALLEGEDLY DEFAMATORY STATEMENTS MADE BY APPELLANTS STURTZ, DEAN AND FISCHER IN THE MAYORAL INVESTIGATION REPORT WERE NOT ABSOLUTELY PRIVILEGED.
 ASSIGNMENT OF ERROR [OF THE CITY OF COLUMBUS]
 THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT OVERRULED DEFENDANT-APPELLANT, CITY OF COLUMBUS', MOTION TO DISMISS REGARDING DEFAMATION AND LIBEL, NEGLIGENT FAILURE TO SUPERVISE AND NEGLIGENCE.
The individual defendants' assignments of error will be addressed together, as all challenge the trial court's conclusion that they were not protected from plaintiffs' claims by the common law doctrine of absolute privilege.[2]
Preliminarily, as this matter arises in the context of a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6), our review of this matter is de novo, and we need not defer to the decision of the trial court. Bell v. Horton (1995), 107 Ohio App.3d 824, 826.
In the context of defamation law, the doctrine of privilege relates to the element of a defamation claim requiring proof that publication of the allegedly defamatory statement was not made under privileged circumstances[3]. The common law has long recognized that in certain circumstances the public interest in uninhibited freedom of expression is so great as to necessitate the relinquishment of the individual right to protect one's reputation through actions for defamation. Bigelow v.Brumley (1941), 138 Ohio St. 574, 579; Howard v. Weiss (Sept. 16, 1976), Franklin App. No. 76AP-113, unreported (1976 Opinions 3028). Such privileged circumstances are divided into two classes, those which are absolutely privileged, and those which are qualifiedly or conditionally privileged. Bigelow, supra;Constanzo v. Gaul (1980), 62 Ohio St.2d 106, 108; Deoma v. ShakerHeights (1990), 68 Ohio App.3d 72, 82-83. The two classes of privilege are distinguished by the scope of their protection. Qualified privilege, on the one hand, is available whenever publication is "`fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.'" Prosser and Keeton, The Law of Torts (5 Ed. 1984) 825, Section 115 (quoting Toogood v. Spyring [1834], 149 Eng.Rep. 1044). Qualified privilege, however, can be overcome by a showing that publication was made with "actual malice," that is, with knowledge that the statement was false or with reckless disregard for whether it was false or not. Hahn v. Kotten (1975), 43 Ohio St.2d 237, paragraph two of the syllabus.
Absolute privilege, on the other hand, provides complete protection from liability for defamation. Bigelow, supra.
However, the application of absolute privilege has generally been limited to communications made in the course of (1) legislative proceedings, (2) judicial proceedings, or (3) the discharge of a duty of the governor or the head of an executive department of the state. Constanzo, supra, at 109; Bell, supra, at 827; Wrenn v.Ohio Dept. of Mental Health (1984), 16 Ohio App.3d 160, 162. See, also, Bigelow, supra, at 580; Prosser and Keeton, at 816-823, Section 114.
The individual defendants argue, however, that Ohio case law has extended the coverage of absolute privilege to include communications made in the discharge of the executive authority of local government entities. The individual defendants first point to the Ohio Supreme Court's decision in Bigelow to support this contention.
In Bigelow, the Ohio Supreme Court extended the doctrine of absolute privilege to cover officials of the Ohio Secretary of State's office who had been appointed by the governor to prepare the official arguments for and against a ballot measure to amend the Ohio Constitution. Id. at 581-582. In extending the protection of absolute privilege to these relatively low ranking executive officials, the court reasoned that the officials were performing a function in the initiative process that served as a substitute for the ordinary process of legislative debate. Id. at 583. Therefore, the same arguments regarding the encouragement of free and open debate which support the broad application of absolute privilege to legislative proceedings, supported the application of absolute privilege to these executive officials.Id. at 582-584.
The individual defendants contend, however, that theBigelow court's citation to Trebilcock v. Anderson (1898),117 Mich. 39, 75 N.W. 129, in which the Supreme Court of Michigan held that a mayor's explanation to council for his veto of a piece of legislation was absolutely privileged, suggests an intention by the Ohio Supreme Court to extend absolute privilege to municipal executive officials generally. We disagree. Trebilcock is not discussed in Bigelow, but is merely one of several cases cited inBigelow as examples of where absolute privilege has been applied to executive officials. Further, Trebilcock does not support a general extension of absolute privilege to municipal executives. Rather, because the mayor's statement which was at issue inTrebilcock was made to city council, the case falls within the well-established rule that statements made in legislative proceedings are absolutely privileged.
The individual defendants also argue that the Ohio Supreme Court's decision in Constanzo, supra, supports the extension of absolute privilege to communications made in the course of exercising local executive authority. In Constanzo, the court held that a statement made by a city council member to a newspaper reporter was not absolutely privileged, as the statement was made outside the legislative forum. Id. at 110-111. Although the Constanzo court did reaffirm absolute privilege's applicability to statements made in the legislative proceedings of a local government, the court did not discuss the doctrine's applicability to local executive authority. In fact, to the extent that the court in Constanzo refused to extend absolute privilege to statements made by a local legislator "other than in a legislative session or related meeting," id. at 111, the case may be read as limiting the doctrine's local applicability to its traditional legislative and judicial spheres.
The individual defendants further point to the opinions in Thyen v. McKee (1990), 66 Ohio App.3d 313, 317 (holding that a Cincinnati police officer was protected by absolute privilege for statements he made about a defendant during the course of the criminal trial); Tanner v. Gault (1925), 20 Ohio App. 243, 247
(holding that the Medina County Commissioners were protected by absolute privilege for a statement made in a resolution stating that the county surveyor had provided the commissioners with a false report, and noting that the commissioners were acting as a legislative body in passing the resolution); Wheeler v. Dailey
(Oct. 22, 1985), Franklin App. No. 85AP-200, unreported (1985 Opinions 3089), (holding that the Columbus Chief of Police was protected by absolute immunity for statements made to an Ohio Senate Committee investigating organized crime); Flynn v. Relic
(June 26, 1980), Cuyahoga App. No. 41404, unreported (holding that the Mayfield Village Law Director was protected by absolute privilege as to a "complaint" filed with the village council accusing the council member of forgery); and Shade v. Bowers (C.P. 1962), 93 Ohio Law Abs. 463, 477 (holding that the Mayor and Police Chief of South Bloomfield were protected by absolute privilege for statements made to the Department of Liquor Control regarding an applicant seeking to have its liquor permit renewed), in support of their contention that Ohio has extended absolute privilege to statements made in the discharge of the executive authority of local government.
Although each of the appellate and trial level cases relied upon by the individual defendants did result in the statements of local executive officials being found to be protected by absolute privilege, the court's findings of absolute privilege in Thyen, Wheeler and Tanner arose not from the fact that the statements at issue were made in the exercise of local executive authority, but from the fact that they were made in a judicial or legislative proceeding. Thus, rather than supporting the extension of absolute privilege to statements made in the discharge of local executive authority, these cases simply illustrate the well-established application of absolute privilege to statements made in judicial and legislative proceedings.
Flynn and Shade do, as Columbus suggests, support an extension of absolute privilege to statements made in the discharge of local executive authority. In both cases, the trial courts rested their finding of absolute privilege on the fact that the allegedly defamatory statements were made by local executives in the course of their official duties. Still, the extension of absolute privilege to statements made in the exercise of local executive authority was unnecessary to either case. In Flynn, the statements at issue were made by a village law director during a meeting of the village council. In Shade, the statements at issue were made by a mayor and police chief during a quasi-judicial hearing before the Liquor Control Department. Thus, the courts inFlynn and Shade could have based their findings of privilege on the established principle that statements made in legislative and judicial proceedings are absolutely privileged. Further, neitherFlynn nor Shade has persuaded any other Ohio courts to extend absolute privilege to statements made in the exercise of local executive authority. We are similarly unpersuaded.
Having found no basis for the individual defendants' claims to absolute privilege for statements made in the Mayor's investigative report, their assignments of error are overruled.
In its sole assignment of error, Columbus argues that the trial court erred in denying its motion to dismiss plaintiffs' claims for defamation, conspiracy to defame, negligence, and negligent failure to supervise pursuant to R.C. Chapter 2744.
"R.C. Chapter 2744, the Political Subdivision Tort Liability Act, was enacted in response to the judicial abolishment of the doctrine of sovereign immunity. R.C. 2744.02(A)(1) provides that a political subdivision, [such as Columbus[4]], is generally not liable for damages for injury, death, or loss to persons or property incurred in connection with the performance of a governmental or proprietary function of the political subdivision." Franks v. Lopez (1994), 69 Ohio St.3d 345, 347. However, R.C. 2744.09 provides that R.C. Chapter 2744, and consequently the general grant of political subdivision immunity contained therein:
 * * * does not apply to, and shall not be construed to apply to, the following:
 (A) Civil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability;
 (B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision;
 (C) Civil actions by an employee of a political subdivision against the political subdivision relative to wages, hours, conditions, or other terms of his employment;
 (D) Civil Actions by sureties, and the rights of sureties, under fidelity or surety bonds;
 (E) Civil claims based upon alleged violations of the constitution or statutes of the United States, except that the provisions of section 2744.07 of the Revised Code shall apply to such claims or related civil actions. [Emphasis added.]
In the present case, Columbus moved to dismiss plaintiffs' claims arguing that it was immune pursuant to R.C.2744.02(A)(1). The trial court overruled Columbus' motion to dismiss pursuant to R.C. 2744.09(B), holding that plaintiffs' claim arose out of their employment relationship with Columbus, since plaintiffs would not have been the subject of the mayoral investigation if they were not employed by the city.
Columbus contends that the trial court misconstrued the scope of R.C. 2744.09(B). Specifically, Columbus argues that R.C. 2744.09(B) applies only to civil actions relative to "labor matters such as conditions of employment, wages, etc.," which arise out of the employment relationship between the employee and the political subdivision. In support of this reading of R.C. 2744.09(B), Columbus points to the fact that the section refers not only to "[c]ivil actions by an employee," but also "[c]ivil actions by * * * the collective bargaining representative of an employee." According to Columbus, the reference to collective bargaining representatives would not have been included if the section was intended to apply to tort actions generally.
R.C. 2744.09(B) has been the subject of very little judicial discussion, and none which addresses the issue raised by Columbus. Thus, we are faced with a classic case of statutory construction. The paramount goal in any case of statutory construction is to ascertain and give effect to the legislature's intent. Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342,349. However, the first step in this process is to look to the plain language of the statute. State ex rel. Burrows v. Indus.Comm. (1997), 78 Ohio St.3d 78, 81. In so doing, a court must give effect to the words used in the statute, and not delete words used or insert words not used. Dougherty v. Torrence
(1982), 2 Ohio St.3d 69, 70. If the plain language of the statute is clear and unambiguous, the statute must be applied as written and no further construction is necessary. Burrows,supra.
In the present case, the plain language of R.C. 2744.09
convinces us that Columbus' reading of R.C. 2744.09(B) is erroneous. To begin, R.C. 2744.09(B) provides that it pertains to "any matter that arises out of the employment relationship between the employee and the political subdivision." (Emphasis added.) Columbus' construction of the section would effectively read the words "any matter" out of the section and substitute the words "any labor matter."
In addition, R.C. 2744.09(C) expressly states that R.C. Chapter 2744 does not apply to "[c]ivil actions by an employee of a political subdivision against the political subdivision relativeto wages, hours, conditions, or other terms of his employment[.]"
(Emphasis added.) Columbus' reading of R.C. 2744.09(B) renders R.C. 2744.09(C) superfluous, in contravention of the well-established principle of statutory construction requiring that a statute be read, to the extent practicable, to give effect to all its parts. State v. Arnold (1991), 61 Ohio St.3d 175, 178.
When R.C. 2744.09(B) and (C) are read together, their meaning is apparent. R.C. 2744.09(C) makes R.C. Chapter 2744 inapplicable to civil actions brought by employees of political subdivisions against their employers pertaining to terms of employment. R.C. 2744.09(B) makes R.C. Chapter 2744 inapplicable to all other civil actions brought by employees of political subdivisions, or their collective bargaining representatives, against their political subdivisions which arise out of the employment relationship generally. Such a reading gives effect to both provisions and comports with the plain meaning of language used therein.
Alternatively, Columbus argues that R.C. 2744.09(B) does not apply to plaintiffs' action because the action did not arise out of the employment relationship between Columbus and plaintiffs.
The meaning of the phrase "arises out of the employment relationship between the employee and the political subdivision" in R.C. 2744.09(B) was discussed in Marsh v. Oney (Mar. 1, 1993), Butler App. No. CA92-09-165, unreported, and Nungester v.Cincinnati (1995), 100 Ohio App.3d 561. In Marsh, a Middletown police officer, Theodore Marsh, brought claims for defamation and intentional infliction of emotional distress against the city of Middletown arising out of an investigation into allegations that Marsh had made obscene telephone calls to another city employee. The court determined Marsh's action did not involve a "matter that arises out of the employment relationship" between Marsh and the city of Middletown because the statements which gave rise to Marsh's claims involved "wrongful conduct outside of the workplace completely unrelated to his employment as a police officer."
Similarly, in Nungester, Cincinnati police officer Larry Nungester sued the city of Cincinnati for false arrest, malicious prosecution, and intentional infliction of emotional distress after the grand jury refused to indict him for theft for allegedly taking lumber from a lumber yard. The court determined that officer Nungester's claims did not arise out of his employment relationship with Cincinnati, as Officer Nungester was engaged in a solely personal transaction at the time of the incident which gave rise to his claims. Id. at 566.
Here, accepting the allegations in plaintiffs' complaint as true, the Mayoral Investigative Report, which gave rise to plaintiffs' claims, states that Commander Marcum mishandled murder, prostitution and gambling investigations, and Commander Panzera intentionally interfered with an undercover narcotics investigation for personal gain. In contrast to the allegations which gave rise to the plaintiffs' claims in Marsh and Nungester, the statements in the Mayoral Investigative Report regarding plaintiffs, allege nonfeasance and malfeasance by plaintiffs in carrying out their official duties as Columbus Police Commanders. For this reason, we conclude that plaintiffs' claims against Columbus do relate to matters that arise out of the employment relationship between plaintiffs and Columbus. See Patrolman X v.City of Toledo (Apr. 22, 1996), Lucas C.P. No. CI94-2884, unreported. Therefore, R.C. 2744.09(B) applies to the instant action and Columbus is not entitled to the immunity provided to political subdivisions by R.C. Chapter 2744.
Finally, in response to plaintiffs' claim for negligent supervision Columbus argues that it is protected by the public duty/special duty theory of municipal liability. The trial court concluded that because the matter of whether Columbus owed plaintiffs a "special duty" to supervise those conducting the mayoral investigation would require the consideration of matters outside the pleadings, the issue was not a matter for consideration on a Civ.R. 12(B)(6) motion to dismiss. Columbus argues that the court erred in so determining.
It is well settled that when considering a motion to dismiss brought pursuant to Civ.R. 12(B)(6), a court is "confinedsolely to the averments of the petition and cannot consider matters outside the pleadings." (Emphasis sic.) State ex rel.Karmasu v. Tate (1992), 83 Ohio App.3d 199, 207.
In Sawicki v. Ottawa Hills (1988), 37 Ohio St.3d 222, paragraph four of the syllabus, the Ohio Supreme Court held as follows with respect to the public duty/special duty theory of municipal liability:
 In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.
The demonstration of a special duty or relationship requires proof of factual matters outside the pleadings. Thus, the matter is not a proper subject for determination on a motion to dismiss for failure to state a claim upon which relief can be granted.Karmasu, supra.
Columbus' single assignment of error is overruled.
Having overruled each of defendant-appellants' assignments of error, the judgment of the trial court is affirmed.
Judgment affirmed.
[1] Plaintiffs' amended complaint also asserted claims against the individual defendants for intentional infliction of emotional distress, declaratory judgment, and abuse of power which are not implicated in the instant appeal.
[2] In our prior opinion in this matter, we held that the trial court's determination denying the individual defendants' claims of absolute privilege was a final appealable order under R.C.2744.02(C). Marcum v. Rice (Nov. 3, 1998), Franklin App. Nos. 98AP-717, 718, 719, 721, unreported (1998 Opinions 4996).
[3] The elements of a common-law defamation claim, which includes both libel and slander, are: (1) a false and defamatory statement concerning another; (2) an unprivileged publication ofthe statement to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Akron-CantonWaste Oil, Inc. v. Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591,601; Restatement of the Law 2d, Torts (1977) 155, Section 558.
[4] R.C. 2744.01(F) defines the term "political subdivision" to include "a municipal corporation."