NUNGESTER et al., Appellants,

v.

CITY OF CINCINNATI et al., Appellees.

[Cite as *Nungester v. Cincinnati* (1995), 100 Ohio App.3d 561.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–930771.

Decided Jan. 31, 1995.

---

*Joseph G. Carr* and *Merlyn D. Shiverdecker,* for appellants.

*Fay Dupuis,* City Solicitor, *Karl P. Kadon III, Mark Vollman* and *Gary R. Lewis,* for appellees city of Cincinnati, Lawrence Whalen, David A. Rager,

Captain Robert Biddle, Lieutenant Ed Harris, Sergeant Al Mathews, Lieutenant James Smith and Robin Bastin.

*McCaslin, Imbus & McCaslin,* and *R. Gary Winters* and *Peter J. Miller,* for appellees Swallen's, Inc., Jack Reynolds, Virginia Taylor, Pat Caudill and Don Farrell.

---

*Per Curiam.*

This appeal is taken from the Civ.R. 12(B)(6) dismissal of claims asserted against the city of Cincinnati, its former safety director, and various members of its police department, and from the Civ.R. 56(B) entry of summary judgment for a department store and five of its employees on the claims separately asserted against them. In their two assignments of error, the plaintiffs-appellants, Larry and Norma Nungester ("Nungester"), raise the following issues: (1) whether, due to sovereign immunity, their complaint failed to state claims upon which relief could be granted against the city defendants; and (2) whether there remained fact-intensive issues that rendered inappropriate the summary judgment entered for the department store and its employees. We affirm the trial court with respect to the claims resolved by summary judgment, and with respect to the state and federal claims against the city dismissed under Civ.R. 12(B)(6); we reverse the dismissal of the remaining claims against the city employees.

In March 1991, Cincinnati Police Sergeant Alan Mathews contacted the security director for the department store chain known as Swallens, Inc., to inquire about thefts from the company's stores. Although security personnel were unaware of any specific losses, Swallens agreed to investigate, and Sergeant Mathews was thereafter informed that a Cincinnati police officer had purchased building supplies below the authorized price at Swallens Western Hills store.

After Sergeant Mathews requested notification of any further incidents involving police officers at the Western Hills store, police learned on April 4 that an officer would be picking up an order for lumber that evening. No one appeared, however, until the following day, when a police surveillance team saw Nungester and another officer arrive and begin to load lumber into a truck. Although Nungester had apparently paid to have Swallens deliver the materials to his home, Swallens had advised him that it could not make the delivery. Moreover, while Nungester was actually picking up the lumber, Swallens, in compliance with the instructions of the police investigators, provided no assistance to him and did not compare the purchase invoice with the amount of lumber Nungester was placing in his truck. When Nungester completed the loading, police arrested him and charged him with theft, claiming that the number of boards loaded exceeded the number actually purchased.

The grand jury refused to indict Nungester after he was bound over at a preliminary hearing. He remained suspended from his duties as a police officer until related disciplinary charges were dismissed by the Ohio Civil Service Commission.

According to Nungester's amended complaint, among the claims specifically pleaded in the proceedings below were civil rights violations under Section 1983, Title 42, U.S.Code, false arrest, malicious prosecution, and intentional infliction of emotional distress. The state and federal claims against the city defendants were dismissed in an order entered on October 21, 1992. That order became final, and the action was fully adjudicated, when the court below entered summary judgment in favor of the remaining defendants on September 7, 1993.

■ Nungester's first assignment of error challenges the trial court's dismissal of the claims asserted against the city defendants, arguing that those defendants should not have been entitled to invoke the shield of sovereign immunity against claims that were sufficiently pleaded on the basis of recognized theories of recovery under state and federal law. This argument is well taken only with respect to the state and federal claims asserted against the individually named city employees.

■ Where, as here, claims are dismissed under Civ.R. 12(B)(6), it must appear "beyond doubt" from the manner in which the complaint is pleaded "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *O'Brien v. Univ. Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 245, 71 O.O.2d 223, 224, 327 N.E.2d 753, 755. All factual allegations made in the complaint must be presumed true, and the plaintiff is entitled to the benefit of all reasonable inferences. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753, 756. To avoid a dismissal, the plaintiff is not required to prove his case with evidence, but only to point out some set of facts consistent with the complaint that, if proved, would allow the plaintiff to recover. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 145, 573 N.E.2d 1063, 1066.

■ In Ohio, immunity from civil liability is provided to a city and its employees under the Political Subdivision Tort Liability Act, R.C. Chapter 2744. The general rule is that such immunity applies to shield the exercise of governmental or proprietary functions unless the injured party is entitled to rely on one of the exceptions specifically recognized by statute. R.C. 2744.02(A)(1). In this case, Nungester argues that his complaint was sufficiently pleaded to invoke three of the statutory exceptions: (1) it alleged liability under R.C. 2744.03(A)(6) for acts committed by city employees "with malicious purpose, in bad faith, or in a wanton or reckless manner"; (2) it stated claims against the city that arose out of his employment relationship with the city, R.C. 2744.09(B); and (3) it based

claims on alleged violations of federal law and the U.S. Constitution. For the following reasons, we are convinced that the complaint stated some claims upon which relief conceivably could have been granted under two of the exceptions.

By its terms, R.C. 2744.03(A)(6) involves an exception only to the immunity of subdivision employees, not the subdivision itself. The applicability of the exception in this case must, accordingly, be determined primarily in the context of the state-law claims asserted against the city employees. In this respect, a review of the complaint reveals a number of allegations that portray in some detail what may fairly be construed as concerted action among the city employees, in deliberate or reckless disregard for the truth, to arrest and prosecute Nungester for a crime he did not commit, and, in that process, not only to conceal material evidence, but also to encourage the presentation of false testimony. Under these circumstances, it cannot be said that Nungester can prove no set of facts entitling him to avoid immunity on the state-law claims asserted against the city employees on the ground that the underlying acts "were with malicious purpose, in bad faith, or in a wanton or reckless manner."

Unlike R.C. 2744.03(A)(6), the second exception upon which Nungester relies extends by its terms to claims asserted against a political subdivision itself:

"[Subdivision immunity] does not apply to, and shall not be construed to apply to, the following:

" * * *

"(B) Civil actions by an employee, or the collective bargaining representative of an employee, against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision[.]" R.C. 2744.09(B).

With respect to the applicability of this exception, Nungester offers a motive-based, but-for rationale that is much like what distinguishes causation in fact from proximate causation in the law of negligence. He argues essentially that his state-law claims against the city arose solely because he was singled out for arrest and prosecution on the basis of his identity as a police officer, and that the incidents on which his complaint was based would never have occurred in the absence of his employment relationship with the city.

In our judgment, the fundamental flaw in Nungester's argument is that his undeniable factual status as a police officer was of absolutely no legal significance to the state-law claims he asserted against the city. From the allegations of his complaint, it is beyond doubt that, at the time of the incident that gave rise to his claims, he was acting not in furtherance of his official duties as a police officer, but solely to carry out a purely personal transaction with Swallens. It is further clear that all of the rights being asserted in his claims of false arrest, malicious

prosecution, and the like were purely personal rights that in no way were created by or dependent upon the existence of his employment relationship with the city. For these reasons, we are persuaded that Nungester was not entitled to rely on R.C. 2744.09(B) to avoid the immunity afforded to the city on the state-law claims asserted against it. Accord *Marsh v. Oney* (Mar. 1, 1993), Butler App. No. CA92–09–165, unreported, 1993 WL 64177 (no exception to immunity when claims against city predicated on charge of telephone harassment lodged against police officer by co-worker).

The final exception raised by Nungester makes the immunity afforded under R.C. Chapter 2744 inapplicable to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States." R.C. 2744.09(E). Because there is no question that this exception stood in the way of dismissing the Section 1983 federal claims asserted against all the city defendants on immunity grounds, we are left to determine whether the manner in which those claims were actually pleaded in Nungester's complaint provided an independent basis for dismissal under Civ.R. 12(B)(6).

■ Section 1983, Title 42, U.S.Code makes actionable a deprivation of rights, privileges, or immunities secured by the U.S. Constitution or the laws of the United States when the deprivation results from action taken by a person under color of state law. In view of what we have already said about the allegations concerning the concerted actions to arrest and prosecute Nungester falsely, to suppress material evidence and to encourage perjury, we have no doubt that the complaint sufficiently stated Section 1983 claims against the city employees individually on the basis of violations of Nungester's Fourth Amendment right to be free from unreasonable seizures and his Fourteenth Amendment right to receive due process of law.

■ The same cannot be said, however, for the allegations concerning the liability of the city itself, largely because the law has imposed an additional requirement for granting relief against a municipality under Section 1983. It is well settled that a municipality's conduct is actionable within the meaning of Section 1983 only when a deprivation of federal rights results specifically from the execution of a city policy or custom, regardless of whether that policy or custom has been formalized in writing. *Monell v. New York City Dept. of Soc. Serv.* (1978), 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. Liability may arise under this standard only in limited circumstances where it can fairly be said that the municipality itself caused the constitutional violation at issue by having a policy or custom whose execution inflicted the claimed injury. *Canton v. Harris* (1989), 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412.

In the present case, Nungester's complaint goes to great length in its factual allegations to portray various legal wrongs arising from a single incident in which an abuse of power by lower echelon members of a police department is said to have been approved by higher-ranking city officials. With respect to relating that single incident of abuse to a city policy or custom that itself caused the alleged constitutional violations, the only factual allegations that go beyond a purely abstract reference to undefined "policies, customs and usages" are that the city "was grossly negligent in training and supervising" its police officers, and that the city "ratified and approved" the single incident of abuse. In our judgment, neither ground is sufficient to state a cognizable Section 1983 claim against the city.

With respect to the issue of training and supervision, the allegation of gross negligence is, on its face, legally deficient, because even if Nungester could prove some set of facts demonstrating such negligence, that would not establish a basis for municipal liability under the accepted standard that requires a city to manifest by general custom or policy some "deliberate indifference to the rights of persons with whom the police come into contact." *Canton v. Harris, supra,* 489 U.S. at 388, 109 S.Ct. at 1204. With respect to the issue of ratification, we hold that where, as here, the allegations concern nothing more than the approval of a single incident, that alone is insufficient to impose liability in the absence of some set of facts consistent with a more general practice reflecting deliberate indifference to the constitutional rights of persons served by the police. See *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138, 140 (referring to explicit authorization of a practice or an unauthorized practice sufficiently persistent and widespread to amount to a custom representing municipal policy). In the absence of the appropriate allegations in the complaint, and in view of Nungester's failure otherwise to point to any set of facts that, if proved, would show a policy or custom based upon deliberate indifference, we conclude that the Section 1983 claim against the city was properly dismissed under Civ.R. 12(B)(6). Nungester's first assignment of error is therefore well taken only with respect to the state and federal claims asserted against the individual city employees.

In the second assignment of error, Nungester attacks the summary judgment entered in favor of Swallens and its employees on the state and federal claims asserted against them. At the heart of his argument is the assertion that there are, on this record, genuine issues of material fact concerning whether the Swallens defendants actively engaged in wrongdoing in the episode that gave rise to the arrest and prosecution of Nungester. As Nungester sees it, there is a legitimate basis for concluding that the Swallens employees were the "primary

movers" in the investigation of the alleged theft and were "instrumental" in having him arrested.

A party moving for summary judgment under Civ.R. 56 has an initial burden to demonstrate why he is entitled to judgment as a matter of law by, for example, pointing out to the court the absence of any evidence to support an essential element of his opponent's claim or defense. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801. When the moving party's burden is satisfied under Civ.R. 56(C), the opposing party becomes subject to a "reciprocal burden" to set forth specific facts, beyond the allegations and denials in the pleadings, demonstrating that a "triable issue of fact" remains in the case. *Id.* at 115, 526 N.E.2d at 801. To avoid summary judgment, a claim must be more than colorable. See *Wing v. Anchor Media Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Whether a genuine issue of material fact exists ordinarily depends on whether the evidence reflects "a sufficient disagreement to require submission to a jury" or whether it is "so one-sided that one party must prevail as a matter of law." *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, 1126, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251–252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202.

In the instant case, the evidence in the record does not allow reasonably for a finding that Swallens played any meaningful role in the arrest, confinement and prosecution of Nungester. The decisions to proceed against him were solely those of the police. The most that can be said about Swallens under the circumstances is that it took no action with respect to the arrest and prosecution specifically in response to the instructions of the investigating police officers. In this context, elements essential to the success of Nungester's Section 1983 claim and his state-law claims of false arrest, malicious prosecution, and intentional infliction of emotional distress against the Swallens defendants have been negated as a matter of law, and the entry of summary judgment on them was, therefore, appropriate.

The only other substantive claim addressed by Nungester in the second assignment of error is one for negligent performance of a contractual duty. With respect to this claim, the Swallens defendants appropriately pointed out below in support of their motion for summary judgment that there was no evidence in the record on which to base either a finding of a breach of duty or a finding of proximate cause. The reciprocal burden identified in *Mitseff, supra,* was thus triggered, and that burden to avoid summary judgment has plainly not been met by Nungester's reliance on the unsubstantiated allegations made in his complaint. The second assignment of error is, accordingly, not well taken.

The judgment of the court of common pleas is hereby affirmed with respect to the dismissal of all the state and federal claims asserted against the city of Cincinnati, and with respect to the entry of summary judgment on all claims asserted against the Swallens defendants. With respect to the dismissal of the state and federal claims asserted against the individually named city employees, however, the judgment is reversed and this cause is remanded for further proceedings in accordance with law on those claims only.

*Judgment accordingly.*

SHANNON, P.J., GORMAN and M.B. BETTMAN, JJ., concur.