**Phillip VAN HULL, et al., Plaintiffs,**

v.

**The MARRIOTT COURTYARD, et al., Defendants.**

**No. 399CV7113.**

United States District Court, N.D. Ohio, Western Division.

Jan. 18, 2000.

Brian P. Barger, Brady, Coyle & Schmidt, Toledo, OH, Jack J. Brady, Brady, Coyle & Schmidt, Toledo, OH, for plaintiffs.

John A. Borell, Office of the Prosecuting Attorney, Borell, Toledo, OH, Louis J. Licata, Licata & Associates, Alison C. Little, Licata & Associates, Independence, OH, Damian Myron Rodgers, Office of the Prosecuting Attorney, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

This is a civil rights case in which plaintiffs allege that they were wrongfully evict-

ed from their room at the Marriott Courtyard Inn (the Marriott) and, later, falsely arrested and jailed by Lucas County Sheriff's Deputies. Pending are defendants' motions for summary judgment. For the following reasons, the motions are granted in part and denied in part.

## BACKGROUND

On April 24, 1998, Daniel Couture, Philip Van Hull and their wives, Lynn Couture and Nancy Van Hull (plaintiffs), checked into the Marriott in Toledo, Ohio, for a one night stay. That evening, a security guard, Ronald Slough (Deputy Slough), an off-duty Lucas County Sheriff's Deputy, evicted the Coutures from the Marriott after other guests complained of excessive noise.

Deputy Slough alleges that he was instructed to evict the Coutures because they had ignored a request to turn down their music. Deputy Slough alleges he heard loud music coming from their room. He knocked on the door, but the music allegedly was so loud that he could not get the occupants' attention. After pounding on the door, it was opened by Mr. Couture, who allegedly appeared to be glassy-eyed and drunk. Deputy Slough also alleges to have smelled the odor of alcohol on Mr. Couture's breath. Mr. Couture was told that he was being evicted.

Mr. Couture complained of his eviction at the front desk, and demanded to speak to a manager. A manager was contacted at her home, by telephone, and she explained to Mr. Couture that the Marriott strictly enforced a "no party, no alcohol" policy. The manager told Mr. Couture that the Marriott had concluded that plaintiffs were consuming alcohol at a party in the Coutures' room based on observations made by Deputy Slough. Thus, they had no choice but to check out.

Mr. Couture allegedly became upset, loud and obnoxious with the manager and other employees of the Marriott because of his eviction. Deputy Slough called the Lucas County Sheriff's Department (Sheriff's Department). Soon thereafter, members of the Sheriff's Department arrived at the Marriott, and Mr. Couture was taken into custody for disorderly conduct.

As Mr. Couture sat in a squad car outside the Marriott, Mr. Van Hull tried to convince various Sheriff's Deputies to release his friend. After allegedly ignoring instructions to stay inside the hotel, Mr. Van Hull also was arrested for disorderly conduct. Mr. Van Hull alleges that when he was being placed in the back seat of a squad car, one of the Sheriff's Deputies, Deputy Schiavone, kicked his knee several times, injuring it.

Messrs. Couture and Van Hull were booked for fourth degree disorderly conduct. They were placed in a cell for five hours, and then released. After being released, they returned to the Marriott to sleep and shower in the Van Hulls' room. Charges against them later were dropped.

Plaintiff filed suit for breach of the covenant of quiet enjoyment (Count I), false arrest (Count II), false imprisonment (Count III), damages (Count IV), and violation of 42 U.S.C. § 1983 (Count V).

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## DISCUSSION

### I. Count I: Breach Of The Covenant Of Quiet Enjoyment

■ Plaintiffs allege that the Marriott breached the covenant of quiet enjoyment by evicting the Coutures from their hotel room.[1] The Marriott counters that there is no covenant of quiet enjoyment that applies to hotel guests. I agree with the Marriott.

Ohio's Landlord and Tenant Act, O.R.C. § 5321 *et seq.*, codifies the common-law right to quiet enjoyment, *Allstate Ins. Co. v. Dorsey*, 46 Ohio App.3d 66, 68, 545 N.E.2d 920 (1988), as a right belonging not to guests of hotels, but rather to tenants of leased property. Section 5321.01 specifically excludes "[t]ourist homes, hotels, motels, and other similar facilities" from the definition of "residential properties." Residential properties are the only kinds of properties landlords must maintain so that their tenants can quietly enjoy their living space. O.R.C. § 5323.04. No statute or

published case in Ohio extends a similar obligation to proprietors of hotels.

Accordingly, the Coutures cannot prevail on their claim of breach of quiet enjoyment against the Marriott. Count I of plaintiff's first amended complaint, therefore, shall be dismissed.

### II. Counts II, III And IV: State Law Claims

■ Plaintiffs allege that Messrs. Couture and Van Hull were falsely arrested and/or imprisoned by the Sheriff's Department, Deputy Slough, and the Marriott, resulting in injury. *Rogers v. Barbera*, 170 Ohio St. 241, 243, 164 N.E.2d 162 (1960) ("False arrest and false imprisonment as causes of action are virtually indistinguishable."). The tort of false arrest and/or imprisonment "consists [of] depriving the plaintiff of his liberty without lawful justification." *Id.*

The Sheriff's Department and Deputy Slough seek summary judgment because, they argue, they are immune from state tort claims, including the claim of false arrest and/or imprisonment. The Marriott argues that it is entitled to summary judgment because it played no role in taking Messrs. Couture and Van Hull into custody. I agree with defendants.

#### A. The Sheriff's Department

■ In Ohio, a presumption of qualified immunity is accorded official, governmental acts carried out by political subdivisions and their employees. Ohio Rev.Code § 2744.02. *See also Cook v. Cincinnati*, 103 Ohio App.3d 80, 90, 658 N.E.2d 814 (1995) (observing that there is a presumption of qualified immunity). Political subdivisions may lose this presumption, however, if their alleged conduct causes an injury falling into one of the exceptions listed at § 2744.02(B)(1)-(5) of the O.R.C.:

1) Injuries caused by the negligent operation of a motor vehicle;

---

1. Because the Van Hulls were not asked to leave their room, they, obviously, have no standing to assert a quiet enjoyment claim.

2) Injuries caused by the negligent performance of proprietary functions;

3) Injuries caused by the failure keep public roads, highways and streets open, in repair and free from nuisance;

4) Injuries caused by negligence on the grounds of a building used for governmental purposes; or

5) Injuries for which liability expressly is imposed by the Ohio Revised Code.

Here, the Sheriff's Department is a political subdivision engaged in the provision of police services. *See, e.g., Jo Jones v. Franklin County Sheriff's Dept.,* 1999 WL 527782, *4 (Ohio App. June 21, 1999) ("It is clear from a reading of R.C. § 2744.01(F) that ... the Sheriff's Office ... [is a] political subdivision[ ] as that term is defined."). Provision of police services is a government function. O.R.C. § 2744.01(C)(2)(a). *See also McCloud v. Nimmer,* 72 Ohio App.3d 533, 538, 595 N.E.2d 492 (1991) (citing *Haas v. City of Akron,* 51 Ohio St.2d 135, 364 N.E.2d 1376 (1977)) (holding that police services have always been considered a governmental function, not a proprietary function). Thus, the Sheriff's Department is immune from civil suit unless plaintiffs prove that one or more of the exceptions at § 2744.02(B)(1)-(5) apply.

Plaintiffs fail to allege the applicability of any exception, nor have they identified facts suggesting that the Sheriff's Department otherwise has lost its qualified immunity. Thus, all state law claims against the Sheriff's Department must be dismissed.

## B. Deputy Slough

Employees of the Sheriff's Department enjoy individual, qualified immunity for conduct carried out 1) within the scope of their employment and 2) in connection with a government function, so long as that conduct cannot be described as malicious, reckless, or in bad faith. O.R.C. § 2744.03(A)(1) and (6)(b). Plaintiffs argue that Deputy Slough participated in the arrests of Messrs. Couture and Van Hull as a security guard for the Marriott, not in is his capacity as a police officer engaged in a government function, and, therefore, enjoys no immunity under the O.R.C. Defendants disagree, arguing that Deputy Slough clearly was engaged in official acts at the time Messrs. Couture and Van Hull were arrested, and, further, that he is immune from civil suit because he did not act maliciously, recklessly, or in bad faith.

### 1. Active Participation

Plaintiffs recite facts to support their position that Deputy Slough did not physically participate in the arrests of Messrs. Couture and Van Hull, and that he, at all times, appeared to be fulfilling the duties of a security guard. (Doc. 55 at 27–32). If treated as a security guard carrying out non-government functions, Deputy Slough has no qualified immunity. O.R.C. § 2744.03(A)(1) and (A)(6)(a). Indeed, he would be subject to tort liability like any civilian, which is what plaintiffs desire.

 A civilian only can be held liable for the false arrest and/or imprisonment of a suspect by the police if the civilian took an "active part" in bringing about the arrest and/or imprisonment. *Jo Ann Beverly v. The Lawson Co.,* 1983 WL 4607, *4 (Ohio App. Aug. 18, 1983) (citations omitted). "In short, the arrest by the officers must be so induced or instigated by the [civilian] defendant that the act of arrest is made by the officer, not of his own volition, but to carry out the request of the [civilian] defendant." *Id.* Whether a civilian's instigation is sufficient to expose it to liability for a wrongful arrest made by an officer depends on the facts of each case. *Id.* Merely summoning or calling on an officer for protection against a disturbance, or trespass, or to keep the peace, is not sufficient participation to impose liability as a general rule. *Id.* The same applies if the action is one for false imprisonment and not false arrest. *Id.*

 Here, plaintiffs submit that Deputy Slough took active part in the arrest and/or imprisonment of Messrs. Couture and Van, all the while retaining his civilian status as a Marriott employee who has no immunity. But Deputy Slough could not

have taken active part in police activity in Lucas County without becoming, for immunity purposes, a police officer. There is no escaping this conundrum: an off-duty police officer who takes active part in an arrest is, by definition, engaged in his official duties, and thus is shielded from civil suit. *Cooper v. City of Dayton,* 120 Ohio App.3d 34, 40, 696 N.E.2d 640 (1997) (remarking that an off-duty police officer, injured while arresting a shoplifter at his second job, is covered by the police department's workers' compensation insurance because in carrying out the arrest the officer was performing his official duties); *State v. Glover,* 52 Ohio App.2d 35, 38, 367 N.E.2d 1202 (1976) (holding that a municipal police officer has a right and a duty to arrest a shoplifter, even if the arrest occurred when the police officer was off-duty and employed as a security guard). Plaintiffs have no choice, however, but to make the case that Deputy Slough played an active part in bringing about the arrests of Messrs. Couture and Van Hull because active participation is an essential element of their false arrest and/or imprisonment claim. This, in turn, fatally undermines their contention that Deputy Slough acted as a civilian and gives credence to defendants' argument that Deputy Slough is entitled to qualified immunity.

## 2. No Exception Available

Assuming Deputy Slough is viewed as a police officer with qualified immunity, plaintiffs have not shown that his immunity should be disregarded. Law enforcement personnel have the authority to arrest, without a warrant, any person found violating "a law of this state [Ohio], an ordinance of a municipal corporation, or a resolution of a township." O.R.C. § 2935.03. An officer who participates in bringing about an arrest can be found personally liable for false arrest and/or imprisonment if he acted maliciously, recklessly, and in bad faith, as is specified by the immunity statute. O.R.C. § 2744.03(A)(6)(b).

"Malice" is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. *Cook,* 103 Ohio App.3d at 90, 658 N.E.2d 814 (citing *Jackson v. Butler Cty. Bd. of Commrs.,* 76 Ohio App.3d 448, 602 N.E.2d 363 (1991)). "Bad faith" involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. *Id.* Wanton misconduct is the failure to exercise any care whatsoever. *Fabrey v. McDonald Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994) (citing *Hawkins v. Ivy,* 50 Ohio St.2d 114, 116–18, 363 N.E.2d 367 (1977)). "Mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to perversity on the part of the tortfeasor." *Id.* (citing *Roszman v. Sammett,* 26 Ohio St.2d 94, 96–97, 269 N.E.2d 420 (1971)). Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury. *Id.*[2]

Here, plaintiffs have not identified any record evidence that demonstrates that Deputy Slough acted maliciously, recklessly, or in bad faith under Ohio law. Deputy Slough arguably had reason to believe that Messrs. Couture and Van Hull were guilty of disorderly conduct based on what he observed of them at the Marriott. O.R.C. § 2917.11. Deputy Slough alleges that he detected the odor of alcohol on Mr. Couture's breath when he went to evict

---

**2.** Applying these standards, courts have denied summary judgment on immunity grounds where police officers allegedly have: 1) used ethnic slurs during an arrest, *Piro v. Franklin Twp.,* 102 Ohio App.3d 130, 139–40, 656 N.E.2d 1035 (1995), 2) failed to remove an abuser from an abused woman's home, and, soon thereafter, the abuser killed the woman and stabbed her 9 year old daughter, *Smith v. City of Elyria,* 857 F.Supp. 1203, 1214 (N.D.Ohio 1994), and 3) conspired to conceal evidence and falsely accuse a suspect. *Nungester v. Cincinnati,* 100 Ohio App.3d 561, 566, 654 N.E.2d 423 (1995).

Mr. Couture and his wife. Deputy Slough also alleges that the music in Mr. Couture's room was so loud that when he knocked on the door, no one could hear the knock over the music. He allegedly observed that Mr. Van Hull, who was in the room with Mr. Couture, had bloodshot eyes and slurred speech, in addition to smelling of alcohol. After evicting Mr. Couture, Deputy Slough accompanied him down to the lobby, where allegedly he watched as Mr. Couture pounded the reception counter and became loud and obnoxious. Mr. Couture then was arrested for his conduct. Mr. Van Hull, meanwhile, was arrested after he allegedly shouted profanity at police officers (who had arrived at the scene) in a drunken tirade and disobeyed an order to stay away from a squad car.

Messrs. Couture and Van Hull, however, remember the evening differently. They believe the Marriott confused music coming from another room with the soft music in Mr. Couture's suite. They deny being intoxicated or appearing to be intoxicated. Mr. Couture admits becoming "angry and upset in the lobby" because he was being evicted "for no apparent reason," but he alleges that this was a normal reaction, similar to the way in which "any reasonable person of ordinary sensibilities would have behaved" under the circumstances. (Plaintiffs' Brief at 15, 36–37). Mr. Van Hull alleges he never violated any police order, and that Deputy Slough taunted him at the jail by stating "do you remember me." (Id.).

Accepting plaintiffs' version of events as true, at best they have shown that Deputy Slough acted churlishly, and that he should have been more patient in defusing a delicate situation.[3] Plaintiffs may well have been frustrated and there may have been better ways for Deputy Slough to handle their frustration. But plaintiffs have not

established that Deputy Slough was motivated by a dishonest purpose or that he acted with no care whatsoever. As for Deputy Slough's alleged comments at the jail, they may have been uncalled for, but they were not so perverse as to justify a waiver of his immunity. Moreover, though the dropping of charges against Messrs. Couture and Van Hull may be telling of their innocence (Doc. 55 at 21), this does not transform Deputy Slough's conduct into behavior that was malicious, reckless, or in bad faith. *Cook*, 103 Ohio App.3d at 91, 658 N.E.2d 814.

In sum, Counts II, III and IV against Deputy Slough shall be dismissed.

## C. The Marriott

Plaintiffs argue that there are genuine issues of fact regarding Marriott's liability as Deputy Slough's respondeat superior. I disagree.

■ Ohio recognizes the doctrine of respondeat superior: "A master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Osborne v. Lyles*, 63 Ohio St.3d 326, 329, 587 N.E.2d 825 (1992) (citing Restatement (Second) Agency § 219(1) (1958)). In accordance with this general rule, when an employee accused of wrongdoing has no liability to the party claiming injury, the employer cannot independently be found to be liable. *Strock v. Pressnell*, 38 Ohio St.3d 207, 217, 527 N.E.2d 1235 (1988). *See also Campbell v. Colley*, 113 Ohio App.3d 14, 22, 680 N.E.2d 201 (1996) ("There must first be liability on the part of the employee before the employer may be liable for the employee's acts."). Liability of the employer is derivative of that of the employee, and, thus, if the employee has no liability, neither can the employer. *Pretty v. Mueller*, 1997 WL 778983, *4 (Ohio App. Dec.19, 1997).

---

**3.** Plaintiffs do not allege that Deputy Slough had anything to do with the alleged injury to Mr. Van Hull's knee. Only Deputy Schiavone is alleged to have kicked Mr. Van Hull in the knee as Mr. Van Hull got into the rear seat of a squad car. Though kicking a compliant

suspect clearly would fall outside the scope of any officer's police duties and, thus, would not be covered by the immunity statute, Deputy Schiavone was not named a defendant in this case.

Here, the Marriott cannot be held liable for the conduct of Deputy Slough on a respondeat superior theory because Deputy Slough, as discussed in Section II.B, *supra*, is not liable individually. Thus, Counts II, III and IV against the Marriott shall be dismissed.

## III. Count V: 42 U.S.C. § 1983 Claims

Plaintiffs assert a claim against the Sheriff's Department, Deputy Slough and the Marriott pursuant to 42 U.S.C. § 1983.

To establish a claim under § 1983, two elements are required: 1) conduct committed by a person acting under the color of state law that 2) deprives plaintiffs of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Sargi v. Kent City Board of Educ.*, 70 F.3d 907, 913 (6th Cir.1995).

### A. Sheriff's Department

A governmental entity may not be held liable under § 1983 for an employee's conduct on the basis of respondeat superior. *Monell v. Department of Social Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, plaintiffs must show that the government entity itself is the wrongdoer. *Collins v. Harker Heights*, 503 U.S. 115, 122, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992). Government defendants may not be found liable unless plaintiffs can establish that an officially executed policy, or the tolerance of a custom, leads to, causes or results in the deprivation of a constitutionally protected right. *Id.* An act performed pursuant to a "custom" not formally approved by an appropriate decision maker may subject a government entity to liability on the theory that the relevant practice is so widespread as to have the force of law. *Board of County Commrs. of Bryan County v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). To show the existence of an offending custom or policy, plaintiffs must adduce specific facts supporting their claim; conclusory allegations are insufficient. *Taylor v. Canton Police Dept.*, 544 F.Supp. 783 (N.D.Ohio 1982).

In addition to identifying conduct attributable to the government entity (i.e., a governmental custom or policy), a § 1983 plaintiff also must demonstrate that the government entity was the "moving force" behind the injury alleged. *Board of County Commrs. of Bryan County v. Brown*, 520 U.S. 397, 403–04, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). That is, plaintiff not only must show that the governmental action was taken with the requisite degree of culpability but also must demonstrate a direct causal link between the government action and the deprivation of federal rights. *Id.*

Here, plaintiffs' § 1983 claim is based solely on alleged violations of the Fourth and Fourteenth Amendments. (First Amended Complaint at ¶¶ 46–47). Specifically, Messrs. Couture and Van Hull allege that they were arrested by members of the Sheriff's Department for disorderly conduct without probable cause. *See, e.g., Patzig v. O'Neil*, 577 F.2d 841, 848 (3rd Cir.1978) ("Clearly, an arrest without probable cause is a constitutional violation actionable under § 1983."); *Sartin v. Commissioner of Public Safety of State of Minnesota*, 535 F.2d 430, 434 (8th Cir.1976) ("An arrest without probable cause is violative of rights secured by the Constitution and can be the basis of recovery pursuant to 42 U.S.C. § 1983.").

Taking plaintiffs' allegations as true, they have failed to submit evidence that it is an official policy or custom of the Sheriff's Department to make disorderly conduct arrests in the absence of probable cause. Indeed, plaintiffs have proffered no evidence that such a policy or custom exists. Thus, plaintiffs cannot prevail on their § 1983 claim against the Sheriff's Department.

### B. Deputy Slough

When public officials are sued for damages under § 1983 in their individual capacities, they have qualified immunity.

*Stack v. Killian,* 96 F.3d 159, 161 (6th Cir.1996). Officials are entitled to qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir. 1995). "The contours of the right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Whether an official protected by qualified immunity may be held personally liable turns on the "objective legal reasonableness" of his acts. *Johnson v. Estate of Laccheo,* 935 F.2d 109, 111 (6th Cir.1991).

■ Here, plaintiffs allege Deputy Slough, under the color of state law, played an active part in the arrest and/or imprisonment of Messrs. Couture and Van Hull, but that he did so with insufficient probable cause. Probable cause exists where the facts and circumstances are "sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." *Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

Messrs. Couture and Van Hull were arrested for disorderly conduct, a fourth degree misdemeanor. O.R.C. § 2917.12. Plaintiffs, however, contend that Messrs. Couture and Van Hull should not have been arrested because they never received a warning to "cease and desist" their conduct, as is statutorily required before arresting someone for a fourth degree offense. *Id.* at § 2917.12(E). Without providing a "cease and desist" warning, at most Messrs. Couture and Van Hull were guilty of minor misdemeanors, punishable by citation, not arrest. *Id.* at § 2935.26. Accepting as true plaintiffs' representation that no "cease and desist" warning was given, this raises a genuine (albeit narrow) issue of material fact regarding the probable cause of taking Messrs. Couture and Van Hull into custody.

Thus, summary judgment on Count V shall be denied as to Deputy Slough.

### C. The Marriott

■ The Marriott cannot be held liable under § 1983 because it did not, as a private entity, act under the color of state law. To be subject to suit under the color of state law, a defendant must be a state actor or its actions must be attributable to the state. *Collyer v. Darling,* 98 F.3d 211, 231–232 (6th Cir.1996). Neither of these preconditions have been met, and thus plaintiffs cannot sue the Marriott under § 1983.

Count V, therefore, shall be dismissed against the Marriott.

### CONCLUSION

It is, therefore,

ORDERED THAT

1) Counts I, II, III, and IV shall be dismissed against all defendants;

2) Count V shall be dismissed against the Sheriff's Department and the Marriott;

3) Summary judgment on Count V shall be denied as to Deputy Slough.

So ordered.