OPINION.
Plaintiff-appellant Marcia Ann Engleman appeals from the trial court's order granting judgment on the pleadings in favor of her employer, defendant-appellee Cincinnati Board of Education ("the Board"), in her intentional-tort action against it. Because the trial court correctly determined that, pursuant to R.C. Chapter 2744, the Board, as a political subdivision, was immune from the intentional-tort claim alleged in the complaint, its judgment is affirmed.
Engleman was employed by the Board as a special-education teacher. At the beginning of the 1997 school year, she was teaching at the Hughes Center. One of the students newly assigned to Engleman's classroom had a history of violent behavior toward his teachers. Engleman alleged that the Board had received substantial information about this student's violent history, and that it did not share this information with her. She also contended that, for fiscal reasons, the Board did not follow recommendations that a full-time attendant be assigned to the student.
On the second day of classes, the student began to swing his arms, wildly brandishing a pencil and trying to stab himself and Engleman. Engleman tried to subdue him. He struck her, and she fell to the floor with force sufficient to render her unconscious. She suffered a concussion and other continuing physical and emotional injuries.
Engleman sought money damages for her injuries[1] and alleged that the Board, by failing to provide adequate protection and to take reasonable precautions to prevent the student's attack, had intentionally caused her injuries. As the Board had information about the student's propensities for violence and had failed to act on it, Engleman claimed that the Board had acted intentionally and maliciously by willfully and wantonly failing to provide adequate protection and to take reasonable and obvious measures to prevent the foreseeable injuries inflicted on her by the student.
The Board moved for judgment on the pleadings, in accordance with Civ.R. 12(C). It asserted that, as a political subdivision, it was immune from liability on Engleman's intentional-tort claim pursuant to the Political Subdivision Tort Liability Act, codified in R.C. Chapter 2744. The trial court agreed, relying upon the reasoning advanced in Ellithorpv. Barberton Bd. of Edn. (July 9, 1997), Summit App. No. 18029, unreported, discretionary appeal denied (1997), 80 Ohio St.3d 1445,686 N.E.2d 237, and entered judgment for the Board.
In her sole assignment of error, Engleman urges that the trial court erred by granting the Board's motion for judgment on the pleadings. Arguing that Ellithorp was inapplicable or was wrongly decided, she claims that the Board was not immune from suit as her intentional-tort claim arose out of her employment, and thus that the immunity provisions of R.C. Chapter 2744 did not apply pursuant to R.C. 2744.09(B), which makes the chapter inapplicable to matters that arise out of an employment relationship.
 Judgment on the Pleadings
Judgment on the pleadings, pursuant to Civ.R. 12(C), is proper when a court, construing all material allegations in the complaint, and all reasonable inferences to be drawn therefrom, in favor of the nonmoving party as true, concludes that the plaintiff can prove no set of facts to support the claim for relief. See State ex rel. Midwest Pride IV, Inc.v. Pontious (1996), 75 Ohio St.3d 565, 664 N.E.2d 931; see, also, Bockv. Hamilton Cty. Bd. Of Park Commrs. (1999), 132 Ohio App.3d 726,727-728, 726 N.E.2d 509, 510.
 The Three-Tiered Sovereign-Immunity Scheme
In response to the judicial abrogation of common-law sovereign immunity, in 1985 the General Assembly enacted R.C. Chapter 2744, the Political Subdivision Tort Liability Act. The Ohio Supreme Court has identified that "[t]he manifest statutory purpose of R.C. Chapter 2744 is the preservation of the fiscal integrity of political subdivisions."Wilson v. Stark Cty. Dept. of Human Serv. (1994), 70 Ohio St.3d 450,453, 639 N.E.2d 105, 108.
To limit the exposure of political subdivisions to money damages, R.C. Chapter 2744 provides a three-tiered scheme that grants nearly absolute immunity to political subdivisions. The first tier of the analysis in R.C. Chapter 2744 establishes the defense of sovereign immunity for political subdivisions. The next carves out certain exceptions to immunity where liability may still be imposed. Finally, if the claim satisfies one of the exceptions, the third tier delineates those defenses that may be asserted against liability. See, e.g., Franks v. Lopez (1994),64 Ohio St.3d 345, 347, 632 N.E.2d 502, 504.
 The General Rule — Immunity for Political Subdivisions
First, "[t]he general rule is that * * * immunity applies to shield the exercise of governmental or proprietary functions [by a political subdivision] unless the injured party is entitled to rely on one of the exceptions specifically recognized by statute." Nungester v. Cincinnati
(1995), 100 Ohio App.3d 561, 565, 654 N.E.2d 423, 426 (citation omitted). Except as explicitly provided in R.C. 2744.02(B), a political subdivision is not liable in damages in a civil action for injury to persons allegedly caused by "any act or omission of the political subdivision or any employee of the political subdivision in connection with a governmental or proprietary function." R.C. 2744.02(A)(1). A public school is specifically included in the statutory definition of a political subdivision, see R.C. 2744.01(F), and the operation of a public school is a governmental function. See R.C. 2744.01(C)(2)(c).
 Express Exceptions Extinguishing Immunity
Next, R.C. 2744.02(B) lists five express exceptions to the general grant of immunity: the negligent operation of a motor vehicle by an employee, R.C. 2744.02(B)(1); the negligent performance of proprietary functions, R.C. 2744.02(B)(2); the failure to keep public roads open and in repair, R.C. 2744.02(B)(3); the negligence of employees occurring within or on the grounds of certain buildings used in connection with the performance of governmental functions, R.C. 2744.02(B)(4); and the express imposition of liability by statute, R.C. 2744.02(B)(5).
Of these exceptions, only R.C. 2744.02(B)(4), which extinguishes the immunity of a political subdivision for the acts of it employees occurring within buildings used in connection with the performance of governmental functions, arguably applies to this case. See, e.g., Marcumv. Talawanda City Schools (1996), 108 Ohio App.3d 412, 670 N.E.2d 1067. Whether this exception should be construed to encompass any injury-causing negligent act occurring within a building or merely to permit liability for injuries caused by the maintenance of a governmental building is problematic. H.B. 350, declared unconstitutional in State exrel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451,715 N.E.2d 1062, had amended R.C. 2744.02(B)(4) to extinguish immunity when the negligence of employees occurred within or on the grounds of a governmental building, and was due to physical defects within or on the grounds of buildings used in governmental functions.
But divination of the intent of the General Assembly is unnecessary in this case to determine the application of this exception. R.C.2744.02(B)(4), by its express language, only permits a civil action against a political subdivision for the negligent acts of its employees under the conditions and in the places identified in the statute. Here, Engleman alleged only that employees of the Board had committed intentional acts that were not related to physical defects in buildings. Thus, under the statutory scheme created by the act, Engleman could prove no set of facts in support of her claim that would have entitled her to overcome the general grant of immunity to the Board.
 Exceptions to the Exceptions — Defenses for the Intentional Acts of Employees
Finally, R.C. Chapter 2744 enumerates defenses that may be asserted to avoid the liability imposed under R.C. 2744.02(B). Thus, if an exception applies, the political subdivision may be held liable, unless one of the defenses contained in R.C. 2744.03 "excepts" the political subdivision from the exception and grants immunity anew. These defenses, however, only come into play if the plaintiff can demonstrate that one of the exceptions to immunity applies. See Carpenter v. Scherer-Mountain Ins.Agency (1999), 135 Ohio App.3d 316, 337, 733 N.E.2d 1196, 1211; see, also, Feitshans v. Darke Cty. (1996), 116 Ohio App.3d 14, 22,686 N.E.2d 536, 541.
Assuming, for purposes of argument, that Engleman could establish an exception to the general grant of immunity, R.C. 2744.03 would provide a defense to liability for the Board. R.C. 2744.03(A)(2) states, with respect to a civil action brought against a political subdivision to recover damages for injury caused by any act or omission in connection with a governmental or proprietary function,
 The political subdivision is immune from liability if the conduct of the employee involved, other than negligent conduct, that gave rise to the claim of liability was required by law or authorized by law * * *.
(Emphasis added.) As intentional conduct is "other than negligent," this defense protects a subdivision from intentional acts by its employees. See, e.g., Elder v. Fischer (1998), 129 Ohio App.3d 209, 717 N.E.2d 730
(applying the rule of construction expressio unius est exclusioalterius: the specific inclusion of one thing implies the exclusion of another). If an employee acts under the authority of law or exercises an essential function of the political subdivision, but acts so as to commit an intentional tort, the subdivision is immune from liability for the resulting injuries to others. See Gleason and Van Winkle, Comment: The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 514-516. As Engleman alleged intentional torts by Board employees only, even if she could reimpose liability under R.C. 2744.02(B)(4), the Board would be immune under this "exception to an exception."
We note that the other-than-negligent-conduct defense established in R.C. 2744.03(A)(2) would not insulate from suit those Board employees who allegedly denied Engleman the information or resources necessary to remain uninjured. They could be individually liable upon a showing of malice or wanton or reckless behavior. See R.C. 2744.03(A)(6).
 Intentional Torts Do Not Arise Out of the Employment Relationship
Nonetheless, Engleman argues that because her intentional-tort action arose out of her employment relationship with the Board, it was exempt from the general cloak of immunity conferred upon the Board by the foregoing analysis of R.C. Chapter 2744. In addition to the exception to immunity in R.C. 2744.02(B), Engleman notes that R.C. 2744.09(B) provides,
 This chapter does not apply to, and shall not be construed to apply to, * * * [c]ivil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision.
In Ellithorp v. Barberton School Bd. of Edn., a teacher sued her school board for intentional torts after she was injured by a window that had struck her while she was attempting to open it. She claimed that the board had knowledge of the dangers associated with the defective window and had failed to properly maintain it. The Ninth District Court of Appeals held that the board was immune from suit, noting that an intentional tort by an employer against an employee, such as that allegedly committed here, was not included within the exception to immunity set forth in R.C. 2744.02(B)(4), which refers only to "negligent" acts, not to reckless or intentional ones. Relying upon the Ohio Supreme Court's decision in Brady v. Safety-Kleen Corp. (1991),61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus, the court concluded that R.C. 2744.09(B) was not applicable, because an employer's intentional tort against an employee does not arise out of the employment relationship, but occurs outside the scope of employment. This decision has been followed by the courts of the Eighth and Second Appellate Districts. See Ventura v. Independence (May 7, 1998), Cuyahoga App. No. 72526, unreported; Stanley v. Miamisburg (Jan. 28, 2000), Montgomery App. No. 17912, unreported.
The rationale of these decisions derives from the Ohio Supreme Court's interpretation of the separate workers' compensation statutory scheme. InBrady, the court held that the General Assembly could not, consistent with the workers' compensation provision of Section 35, Article II, Ohio Constitution, enact legislation governing employer intentional torts that occur within the employment relationship, because employer intentional conduct "will always take place outside" the employment relationship.Brady, 61 Ohio St.3d at 634, 576 N.E.2d at 729. The Ellithorp analysis applies the "will always take place outside" rationale to the sovereign-immunity statutory scheme and concludes that intentional conduct by a political subdivision's employee is also always outside the employment relationship.
Engleman notes the irony in using the Brady decision, which sought to supplement an injured employee's right to recovery in the workers' compensation context, to extinguish an injured employee's right to recovery where the defendant is a political subdivision.
In our view, Ellithorp is persuasive authority for concluding that R.C. 2744.09(B) prevents the application of R.C. Chapter 2744 to a civil action by an employee against a political subdivision only for any matter that arises out of the employment relationship. The specific language of R.C. Chapter 2744 is a better basis upon which to establish the Board's immunity in this case. To adopt Engleman's reading of R.C. 2744.09(B) would frustrate the general statutory purpose of conferring immunity on political subdivisions. It would render meaningless R.C. 2744.02(B) and 2744.03(A)(2), which provide the exceptions and defenses to immunity for intentional acts committed by an employee of a political subdivision. Moreover, it would require the rejection of a line of Ohio appellate cases that have consistently held political subdivisions immune from intentional-tort claims. See, e.g., Nungester v. Cincinnati,100 Ohio App.3d at 567, 654 N.E.2d at 427; see, also, Chase v. Brooklyn SchoolDist. (Jan. 4, 2001), Cuyahoga App. No. 77263, unreported.
Engleman finally argues that to construe R.C. 2744.09(B) as not applying to intentional-tort claims would negate the provision. This argument is unfounded. The statute removes the sovereign-immunity shield from claims for invasion of privacy, workers' compensation claims, claims under the Whistleblower Act, see R.C. 4113.52 et seq., and, according to the Ellithorp-following Eighth Appellate District, claims of racial discrimination in promotion. See Ross v. Trumbull Cty. Child SupportEnforcement Agency (Feb. 9, 2001), Trumbull App. No. 2000-T-0025, unreported; see, also, Carney v. Cleveland Heights-University HeightsCity School District (May 17, 2001), Cuyahoga App. No. 78051, unreported.
 Conclusion
Engleman alleged only that employees of the Board had committed intentional acts that had resulted in her injuries. Immunity was provided to the Board pursuant to R.C. 2744.02(A)(1). No exception to immunity in R.C. 2744.02(B) was applicable, as Engleman raised only an intentional-tort claim. Although the defenses provided to a political subdivision under R.C. 2744.03 never came into play, R.C. 2477.03(A)(2) would have conferred immunity upon the Board for Engleman's intentional-tort claim. Thus, under R.C. Chapter 2744, and with all material allegations in her complaint construed in her favor as true, we hold that Engleman could prove no set of facts to overcome the general grant of immunity to the Board. See Civ.R. 12(C).
The assignment of error is overruled, and the judgment of the trial court is affirmed.
 _________________ Gorman, Presiding Judge.
 Sundermann and Winkler, JJ., concur.
[1] In paragraph twenty-one of the Board's answer, it claimed that Engleman had made a workers' compensation claim for which she had received benefits. Therefore, the Board alleged that Engleman's remedies had been fully satisfied by the Ohio Workers' Compensation and State Teacher's Retirement Systems.