{¶ 37} While concurring with the majority's analysis and conclusion as to the first assignment of error, I must respectfully dissent from the majority's disposition of the second and third assignments of error. I would hold that Riverdale is not immune from civil liability in this case pursuant to R.C. 2744.09(B), and, therefore, sustain the second assignment of error which would render the third assignment of error moot.
 {¶ 38} Pursuant to R.C. 2744.09(B), a political subdivision's immunity "does not apply to, and shall not be construed to apply to, the following:
(B) Civil actions by an employee, or the collective bargainingrepresentative of an employee, against his political subdivisionrelative to any matter that arises out of the employmentrelationship between the employee and the politicalsubdivision[.]
 {¶ 39} Several appellate courts and the trial court in this case have determined that an intentional tort committed by an employer does not "arise out of the employment relationship" and, therefore, the R.C. 2744.09(B) exception to immunity is not applicable to employer intentional tort cases. See Schmitz v.Xenia Bd. of Edn., 2nd Dist. No. 2002-CA-69, 2003-Ohio-213, at ¶ 15-23; Fabien v. Steubenville, 7th Dist. No. 00 JE 33, 2001-Ohio-3522; Ventura v. Independence (May 7, 1998), 8th
Dist. No. 72526; Ellithorp v. Barberton City School Dist Bd. ofEd. (July 9, 1997), 9th Dist. No. 18029; Sabulsky v.Trumbull Cty., 11th Dist. No. 2001-T-0084, 2002-Ohio-7275;Terry v. Ottawa Cty. Bd. of Mental Retardation Dev.Disabilities, 151 Ohio App.3d 234, 2002-Ohio-7299, at ¶ 24;Engleman v. Cincinnati Bd. of Edn. (June 22, 2001), 1st
Dist. No. C-000597. I find that this conclusion fails to accurately reflect the Ohio Supreme Court's stance on this issue.
 {¶ 40} The courts listed above rely primarily on Blankenshipv. Cincinnati Milacron Chemicals, Inc. (1982), 69 Ohio St.2d 608
and Brady v. Safety-Kleen Corp.(1991), 61 Ohio St.3d 624, which state that an employer intentional tort is outside the scope of the employment relationship. While these cases involve the application for worker's compensation benefits based on an employer intentional tort, the appellate courts above use these cases to interpret the applicability of R.C. 2744.09(B) to a common law employer intentional tort claim.
 {¶ 41} Since the briefs in this case were filed, the Ohio Supreme Court in Penn Traffic Co. v. AIU Ins. Co.,99 Ohio St.3d 227, 2003-Ohio-3373, addressed Blankenship, Brady and one of its subsequent decisions regarding employer intentional tort stating,
In Blankenship v. Cincinnati Milacron Chemicals, Inc.,69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, this court determined that the immunity bestowed upon employers under Ohio's workers' compensation laws does not reach intentional torts committed by an employer. The court reasoned that an employer's intentional tort occurs outside the employment relationship. See, also, Brady v. Safety-Kleen, 61 Ohio St.3d 624, 576 N.E.2d 722, paragraph one of the syllabus. But in Jones v. VIP Dev. Co.
(1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, this court clarified that an injured worker may both recover under the workers' compensation system and pursue an action against his or her employer for intentional tort. Therefore, an injury that is the product of an employer's intentional tort is one that also "arises out of and in the course of" employment. * * *
Although an employer intentional tort occurs outside theemployment relationship for purposes of recognizing a common-lawcause of action for intentional tort, the injury itself mustarise out of or in the course of employment; otherwise, there canbe no employer intentional tort. * * *
`[A]rise out of or in the course of employment' merely meansthat the injury is causally related to one's employment."
 {¶ 42} Based on the foregoing, if we were to continue to define terms in R.C. 2744.09(B) based upon the interpretations given in worker's compensation cases, it is clear that a common law employer intentional tort claim "arises out of the employment relationship" and political subdivisions would not necessarily be immune from liability unless the matter complained of was not causally related to one's employment.
 {¶ 43} To further support the contention that a political subdivision will not always be immune to an employer intentional tort claim, I note that the Court in Jones affirmed a jury verdict ordering the city of Painesville to pay an employee of the city for committing an employer intentional tort resulting in his death which occurred while the employee was performing a function of his job. Furthermore, while the following cases do not involve a workplace injury resulting in an "employer intentional tort" claim, each instance involves an intentional claim against a political subdivision. In both Nungester v.Cincinnati (1995), 100 Ohio App.3d 561 and Marsh v. Oney (Mar. 1, 1993), 12th Dist. No. CA92-09-165, a police officer filed an intentional tort claim against the city after being reprimanded for certain conduct, in Nungester, the officer was accused of theft of building supplies at a lumber store and inMarsh, the officer was accused of making harassing phone calls to a woman's home. In both of these cases, the courts found that R.C. 2744.09(B) did not apply because the officers were not acting in furtherance of their official duties as police officers, but solely to carry out purely personal transactions. However, in Marcum v. Rice (Nov. 3, 1998), 10th App. Nos. 98AP-717, 98AP-719, and 98AP-721, a commander of the Columbus Police Department filed a complaint against the city of Columbus alleging defamation and conspiracy to defame after he was accused of mishandling murder, prostitution and gambling investigations and intentionally interfering with an undercover narcotics investigation. Finding that the allegations alleged malfeasance and nonfeasance by the commander in carrying out his official duties, the court found that the commander's claims did relate to matters that arise out of the employment relationship and found that Columbus was not entitled to immunity pursuant to R.C.2744.09(B).
 {¶ 44} While Marcum, Nungester and Marsh do not involve employer intentional torts per se, I think the treatment of these cases is significant to our analysis of employer intentional torts in the present case. If in the above cases, a political subdivision could be sued for a tort which did not produce a physical workplace injury, I fail to see why a political subdivision should be immune from suit which resulted in a physical work place injury. Moreover, the use of the phrase "arising out of the employment relationship" in the above cases is consistent with a finding of no immunity in the case before us.
 {¶ 45} That said, in the present case, Coolidge was performing her duties as a teacher at Riverdale when she was assaulted. Therefore, I would hold that Riverdale is not protected by immunity from Coolidge's employer intentional tort claim. As for the summary judgment, there is evidence in the record that Riverdale was aware of the child's propensities for violent behavior over a three year period prior to the infliction of the present injuries, had on more than one occasion modified the IEP plan to accommodate those propensities and yet continued to promote the child to the next grade level each year within the mainstream class structure, possibly disregarding the objections of the plaintiff and other teachers in doing so, thereby subjecting classmates and teachers alike to a known and substantial risk of injury. This evidence is clearly sufficient to establish at least a genuine issue of material fact as to whether Riverdale has committed an intentional tort within the requirements of Fyffe v. Jeno's, Inc. (1991),59 Ohio St.3d 115.
 {¶ 46} For the foregoing reasons, I would reverse the judgment of the trial court in its entirety.